

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

April 25, 1990

Mr. A. W. Pogue
Commissioner
State Board of Insurance
1110 San Jacinto
Austin, Texas 78701-1998

Opinion No. JM-1167

Re: Status of insurance prog-
rams in which applicants are
referred, for a fee, to a
single health care provider
(RQ-1867)

Dear Commissioner Pogue:

You ask "whether referral programs that 'arrange for'
services of health care providers to enrollees at a discount
in return for a referral fee are subject to regulation as a
health maintenance organization."

Insurance Code article 20A.03 provides in part that "no
person shall establish or operate a health maintenance orga-
nization in this state . . . without obtaining a certificate
of authority under this Act," and that "any person may apply
to the commissioner [of insurance] for and obtain a certifi-
cate of authority to establish and operate a health main-
tenance organization in compliance with this Act." (The
"Act" referred to in the quoted portions of article 20A.03
is the Health Maintenance Organization Act, codified as
chapter 20A of the Insurance Code. See Ins. Code art.
20A.01.)

You say that the referral programs about which you are
concerned

> have 'arrangements' with single service
> health care providers such as dentists,
> optometrists, and chiropractors either
> verbally or in writing which provide that
> each participating provider will offer
> discounted services to enrollees of the
> programs. Thereafter, the referral programs
> target and market prospective enrollees
> through agents and literature.
>
> The plans offered to prospective enrollees
> are such that a referral fee is charged,

whether an initial amount up front, monthly, quarterly or annually, and said enrollees either receive an I.D. card and/or a listing of participating providers which honor discounts on services.

The referral fees are received by the referral programs from enrollees [but] do not appear to be shared with the providers. The incentive for providers to participate is the potential for increased volume. Thus, enrollees make another payment to the providers directly. Often times, visits to providers are not at any additional cost to enrollees.

You ask first whether a payment by an enrollee in such a referral program in exchange for a list of single health care service providers who offer services at a discount constitutes "prepayment" within the meaning of subpart (s) of article 20A.02, which provision defines "single health care service plan."

"Health maintenance organization" is defined in subpart (j) of article 20A.02 as

> any person who arranges for or provides a health care plan or a <u>single health care service plan</u> to enrollees <u>on a prepaid basis.</u> (Emphasis added.)

"Single health care service" is defined in subpart (r) of article 20A.02 as

> a health care service that an enrolled population may reasonably require in order to be maintained in good health with respect to a particular health care need for the purpose of preventing, alleviating, curing, or healing human illness or injury of a single specified nature and that is to be provided by one or more persons each of whom is licensed by the state to provide that specific health care service.[1]

_____

1.  Also, "health care services" is defined in subpart
                                    (Footnote Continued)

"Single health care service plan" is in turn defined in subpart (s) of article 20A.02 as

> a plan under which any person undertakes to provide, arrange for, pay for, or reimburse any part of the cost of a single health care service, <u>provided, that a part of the plan consists of arranging for or the provision of the single health care service</u>, as distinguished from an indemnification against the cost of that service, <u>on a prepaid basis</u> through insurance or otherwise and that no part of that plan consists of arranging for the provision of more than one health care need of a single specified nature. (Emphasis added.)

We think that the definition of "single health care service plan" in subpart (s) indicates that under such a plan the provision of single health care services is, at least in part, paid for in advance. The referral programs you describe charge a fee for "referring" enrollees to a list of single health care service providers, but do not, as you describe them, pay any part of that fee to the providers for the latter's provision of health care services to the enrollees. Under this scenario, there is no prepayment for the actual health care services eventually provided. Those programs thus do not involve the "arranging for or the provision of the single health care service . . . on a prepaid basis" under the definitional provisions of article 20A.02, subpart (s), and thus do not constitute "single health care service plans."

We understand your second question to be essentially the same question as the one described above. Our answer is the same.

---

(Footnote Continued)
(i) of article 20A.02 as

> any services, including the furnishing to any individual of medical or dental care, or hospitalization or incident to the furnishing of such care or hospitalization, as well as the furnishing to any person of any and all other services for the purpose of preventing, alleviating, curing or healing human illness or injury or a single health care service plan.

You ask finally:  if the referral programs do not  come within the definition of "single health care service plans," and the programs are thus not "health maintenance  organizations" under chapter 20A and  subject to regulation as  such by the commissioner and the State Board of Insurance,  which agencies, if any, have regulatory authority or  jurisdiction over such programs?  We cannot give an exhaustive answer  to this question; however,  we  can point  out  some  relevant provisions.

In addition  to health  maintenance organizations,  the State Board of  Insurance has authority  generally over  the business of insurance in  this state.  See, e.g., Ins.  Code arts. 1.10, 1.14, 1.14-1.   However, the referral plans  you describe appear to lack the feature of "risk  distribution." See 45 Tex.  Jur. 3d  Insurance Contracts  and Coverage  § 1 (and authorities  cited  there); see also  Attorney  General Opinions MW-455  (1982);  H-344  (1974);  WW-1475  (1962); O-4986-A (1943) (and authorities  cited in those  opinions). Having  concluded  that  a  referral  program  such  as  you describe is not a health maintenance organization subject to regulation by  the State  Board of  Insurance under  chapter 20A, we  also  conclude that  neither  does such  a  program constitute an insurance business  under the Insurance  Code. Such programs  are thus  not subject  to regulation  by  the State Board of Insurance.

Of course the  programs would be  generally subject  to state laws -- for example, the Deceptive Trade Practices and Consumer Protection Act.  Bus.  & Com. Code § 17.41  et seq. If they are  corporations, they  must comply  with the  laws applicable thereto.   See, e.g., Bus.  Corp. Act  art.  3.03 (filing of articles of  incorporation with the secretary  of state).  Also, the  health care service  providers to  whom the referral programs refer their enrollees would be subject to regulation by their respective licensing agencies, and to laws governing their professions.  See, e.g., V.T.C.S.  art. 4552-1.01 et seq. (the Texas Optometry Act).

Although you do not raise,  and we consequently do  not address in detail here, any other issues with respect to the lawfulness of such referral practices, we note finally  that provisions of law other than those in the Health Maintenance Organization Act may, depending on the facts of the partic- ular case, restrict such operations.  See generally V.T.C.S. art. 4505a (prohibits health care practitioners from employ- ing any person to secure patients).

### S U M M A R Y

Referral programs that "arrange for" services of single health care service providers at a discount to enrollees in return for a referral fee are not "single health care service plans" under the Insurance Code article 20A.02, relating to health maintenance organizations, where there is no prepayment for the actual single health care services provided.

Very truly yours,

JIM  MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General